IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STACY MAYNOR, ) | |
| ) | |
| Petitioner, ) | NO. 3:06-1172 |
| ) | JUDGE HAYNES |
| ) | |
| v. ) | |
| ) | |
| GLEN TURNER, Warden, ) | |
| ) | |
| Respondent. ) | |

## M E MO R A N DU M

Petitioner, Stacy Maynor, a state prisoner, filed this pro se action under 28 U.S.C. § 2254 seeking to set aside his state conviction based upon his guilty plea to rape of a child for which he received a sentence of 18 years. In his pro se petition, Petitioner's claims were that his guilty plea was involuntary and without full knowledge of its consequences and he was denied effective assistance of counsel because his counsel did not informed him that he would not receive sentence credits during his imprisonment. After a review of the file, on January 3, 2007, the Court appointed the Federal Public Defender to represent Petitioner. (Docket Entry No. 2). In his amended petition, the Petitioner asserts claims of ineffective assistance of counsel that renders his guilty plea unknowing and involuntary. (Docket Entry No. 11). In earlier proceedings, the Court denied the Respondent's motion to dismiss this petition as untimely without prejudice (Docket Entry No. 36), finding an evidentiary hearing was necessary on the Petitioner's assertion of equitable tolling.

### A. Procedural History

Petitioner was charged with seven counts of rape of a child and on September 4, 2002, after a recess during his trial, Petitioner decide to plead nolo contendere to one count of rape of a

child for which he received a sentence of eighteen years. On August 11, 2003, Petitioner filed a pro se post-conviction petition, challenging his guilty plea and asserting ineffective assistance of trial counsel. After an evidentiary hearing, the state trial court dismissed the petition. On appeal, the Tennessee Court of Criminal Appeals affirmed. Maynor v. State, 2006 WL 448659 (Tenn. Ct. Crim. App. Feb. 24, 2006). Because Petitioner did not file a timely application for permission to appeal, on May 2, 2006, the Tennessee Court of Criminal Appeals issued its mandate. (Docket Entry No. 16, Addendum No. 4). In any event, the Tennessee Supreme Court denied Petitioner's application for permission to appeal on July 16, 2006, id. 2006 WL448659 at *1, as untimely. See Docket Entry No. 1, Petition at p. 4.

Petitioner asserts that he mailed his petition in this action on August 25, 2006 and this action was filed on December 1, 2006. (Docket Entry No. 1). This amended petition was filed on June 15, 2007. (Docket Entry No. 11).

## B. Review of the State Record

### 1. Findings of Fact

After opening argument at his trial, Petitioner requested his counsel to explore a plea agreement. (Docket Entry No. 16-7 at pp. 3-9). The plea petition reflected that Petitioner faced a maximum of 60 years. (Docket Entry No. 16-12 at p.1). Petitioner agreed to a "nolo contendere/ best interest plea" for a sentence of 18 years on one count of rape of a child. Id. Petitioner's plea colloquy with the state trial court reflects as follows:

> THE COURT: All right. Mr. Maynor, before I place you under oath, I want to go over just a few things with you. If you can't hear me, I want you to let me know.
>
> <u>This is a best-interest or no-contest plea, which means that you are not being</u>

required under oath to admit that you committed any offense. The question under oath that I will be asking you, however, is whether or not there is evidence or testimony that the State could present to a jury and that a jury could find those facts to be true and find you guilty and I will be asking you that under oath.

Also, going through your rights. The jury has been selected in this case and you certainly have the right to continue on with this jury trial. Now, the allegation in count one is of fellatio and is a Class A Felony, called child rape, which has a range of punishment, I assume in your case, fifteen to twenty-five years. And the law requires that if you are convicted of that offense, that you be - - have a sentencing hearing, the bond would have to be revoked and a sentencing hearing would be set within forty-five days and the Court has to determine based on the law what the sentence would be.

One of the laws that the Court has to consider is the presumptive sentence. Which in this case, is twenty years. And then after that, the Court would consider the enhancement and mitigating factors and determine what an appropriate sentence would be?

The agreement is that you would receive an eighteen year sentence and that means that you must serve in the State penitentiary, all eighteen years, one through eighteen times three hundred and sixty-five days, less only the twenty-one days of pre-trial credit that you have received. There is no parole. This Court would not have any jurisdiction over you, could not change the sentence. The legislature has made the determination that this is a one hundred percent sentence.

Do you understand what the agreement is?

DEFENDANT: Yes, sir.

THE COURT: Do you have any questions that you want to ask your attorney about that before I place you under oath and go through this discussion with you?

DEFENDANT: Yes, sir. (WHEREUPON, Counsel and Defendant confer briefly.)

MR. COLAVECCHIL: Your Honor, we are talking about - - amongst other things, the three thousand, the up to three thousand dollar situation and we want to make sure that - - you know, because he's going to be incarcerated for obviously a long period of time, that he's not able to pay that?

THE COURT: Well, based on there being - - that not being a part of the agreement, the Court has the authority to determine that he is indigent based on this eighteen years of incarceration and the inability to obtain any money of any consequence, I will find that he

3

is indigent if I accept the agreement and there will not be a surcharge.

MR. COLAVECCHIL: No other questions Your Honor.

(Docket Entry No. 16-7, Plea Transcript at pp. at pp. 12-14) (emphasis added). The trial court also had an extended colloquy with Petitioner on the waiver of his trial and related rights. Id. at pp. 15-22.

With the assistance of an inmate advisor, Petitioner filed a state post-conviction petition for which he was appointed counsel. After an evidentiary hearing, the state trial court denied the petition. On appeal, the Tennessee Court of Criminal Appeals made the following factual findings[1]:

> At the post-conviction hearing, the petitioner testified that he dropped out of his Ft. Pierce, Florida high school in the first semester of his tenth grade year and that he has since not returned to school or obtained a GED. He stated that he did not understand what it meant to be subject to community supervision for life or the meaning of standardized sex offender treatment. <u>Although he initially indicated that counsel explained that he would serve one hundred percent of his eighteen year sentence, he further stated that he did not understand his sentence.</u> The petitioner testified that his statement to police was coerced and that he had little sleep prior to rendering the statement. He recalled that counsel unsuccessfully attempted to suppress the statement but was unable to remember whether he was informed that his plea operated as a waiver of his right to appeal the denial of the motion to suppress.
>
> The petitioner stated that he met with counsel prior to trial and gave him a list of potential witnesses, which included the petitioner's mother. He further noted that his mother was not subpoenaed, despite the fact that he had informed counsel that she had information regarding an offer by the petitioner's wife to settle the case in exchange for a cash payment. Specifically, the petitioner testified that his wife indicated that she would not "push[ ] the issue" if he paid her $20,000. He indicated that his wife's offer stemmed from her knowledge of a $100,000 cash settlement he received as a result of a motorcycle accident.

---

[1]State appellate court opinion findings can constitute factual findings in a habeas action . Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness 28 U.S.C. § 2254(e).

4

Case 3:06-cv-01172   Document 50   Filed 03/02/10   Page 4 of 16 PageID #: 573

The petitioner recalled that the victim was examined at "Our Kid's Clinic" in Nashville and that the results of the examination could neither confirm nor rule out the possibility of sexual contact. The petitioner also noted that he initially insisted on taking the case to trial. He stated that he could not recall whether counsel discussed consecutive sentencing with him but that he believed he could get "life in prison" if he proceeded to trial.

On cross-examination, the petitioner testified that he saw the victim and her sister on the day of trial. <u>He reiterated that counsel informed him that, pursuant to his plea agreement, he would serve one hundred percent of eighteen years. Regarding community supervision for life, he indicated that it made sense that community supervision for life referred to reporting to a probation officer in your community for life.</u> The petitioner acknowledged that he signed the Petition for Waiver of Trial by Jury and Request for Acceptance of Plea, which contained the terms of the plea agreement. He further admitted that he remembered "some of" the court's statements to him regarding the waiver of his right to appeal the trial court's ruling on the motion to suppress. The petitioner stated that he did not tell counsel everything he felt he should before trial. Finally, he stated that he was in the Intensive Care Unit (ICU) when his wife offered to settle the case and that he spent his settlement on, among other things, his attorney, cars, drugs, and trailers, because he "didn't want [his] wife touching a dime of it."

On redirect examination, the petitioner testified that he did not initially want to plea and that after he entered the plea, counsel told him that he had "been railroaded." He further stated that he was unsure of what nolo contendere meant and that he did not know that he was giving up his right to appeal. The petitioner indicated that he understood that the State only proceeded on four of the seven counts at trial and that the three dismissed counts could "come back to life," but noted that "[t]hat's the chance that [he had] to take."

Hershel Maynor, the petitioner's father, testified that he transported the petitioner from Arkansas to be questioned by police, a five-hour trip, and that the petitioner had been awake "quite a few hours" when he made his statement to police. He recalled that the petitioner initially wanted to go to trial but changed his mind when he saw that the victim's nine-year-old sister was present to testify. Maynor indicated that neither the petitioner nor counsel knew that the witness was going to testify until the day of trial. He testified that the petitioner took between forty-five minutes and one hour to decide that he was going to plead.

Maynor stated that the petitioner believed that he was the biological father of the victim and her sister but that DNA evidence eventually proved otherwise. He further indicated that he was not aware of whether the petitioner's wife made an offer to settle the case for a cash payment because he was not in the hospital room

5

with them at that time. Maynor testified, however, that the petitioner's mother was in the room but was not presented as a witness on the petitioner's behalf at trial. On cross-examination, Maynor testified that the petitioner was aware that the victim and her sister were present at trial.

Counsel testified that he learned both that the victim's sister would be a witness and the substance of her testimony "[a] few weeks prior to trial." He further indicated that he had adequate time to prepare for trial; that he had copies of all pertinent documents; and that he was not aware of anything that the State should have provided that it did not. Counsel stated that the petitioner began asking about a plea after seeing the victim and her sister during a lunch recess. At that point, counsel began negotiating and reached a plea agreement approximately two hours later. He testified that the petitioner had ample time to consider the plea and that he did not force the petitioner to accept the offer. Counsel stated that he never felt that he and the petitioner suffered from a lack of communication due to the petitioner's limited education and further indicated that he believed the plea to be knowing and intelligent. He specifically noted that he explained to the petitioner that he would serve one hundred percent of the eighteen-year sentence with the possibility of credits reducing the sentence by fifteen percent.

Counsel testified that the trial court's findings of fact at the suppression hearing were conclusive and that it was reasonable for the petitioner to give up his right to appeal those findings. He further stated that he received the tape recording, which he was told contained an attempted bribe to drop the case. He recalled that the quality of the tape was poor and that he "never heard those words on [the tape]." Counsel indicated that he attempted to decipher the contents of the recording to see if any of it could be used in the petitioner's defense, but he was unable to find any beneficial information. He stated that he did not subpoena the petitioner's mother because, after speaking with her, he did not feel that she had information that would aid the petitioner's case. Counsel testified that the report from the examination of the victim could neither confirm nor rule out sexual contact and further noted that there can be sexual penetration without attendant evidence. In sum, counsel stated that he believed he provided effective assistance of counsel.

On cross-examination, counsel testified that he was unaware of whether the victim had received funds from the Tennessee Criminal Injury Compensation Fund. He noted that he discussed the range of punishment and potential enhancing and mitigating factors with the petitioner. Counsel stated that he had contact with the petitioner's wife prior to trial and that he would have attacked her credibility had the case gone to trial. Following the hearing, the post-conviction court issued a written order denying post-conviction relief.

Maynor, 2006 WL 448659 at **1-3 (emphasis added).

6

After its ruling on March 8, 2006, the Tennessee Court of Criminal Appeals relieved Petitioner's counsel from representing Petitioner. (Petitioner Exhibit No. 6). On May 2, 2006, issued its mandate. (Docket Entry No. 16, Attachment 4). Petitioner's pro se application for permission to appeal to the Tennessee Supreme Court that was filed on June 12, 2006. The Tennessee Supreme Court denied the application on July 10, 2006. Petitioner does not recall that his inmate advisor told him of any deadline for a federal habeas petition. Petitioner and the advisor prepared a pro se federal petition that Petitioner signed and notarized on August 23, 2006. On August 25, 2006, Petitioner delivered this petition to prison officials for mailing. (Docket Entry No. 1) that was actually mailed on November 28, 2006. (Petitioner Exhibit 3). The petition was ultimately filed on December 1, 2006. Id.

Sometime prior to the Tennessee Court of Criminal Appeals' decision, Petitioner first telephoned and then wrote a letter to the Tennessee's Board of Professional Responsibility, complaining about his inability to contact his counsel who would not accept his calls or respond to his letters. (Petitioner Exhibit No. 5). At the Board's request, Petitioner's counsel responded with a letter to Petitioner, dated February 28, 2006, advising that he was seeking to withdraw as Petitioner's attorney and had not had any contact with Petitioner.

## C. Review of Federal Proceedings

In this action, Petitioner testified that after his state sentencing, he remained in the Hardeman County Facility until October 14, 2002, when he was moved to the Charles Bass Correctional Complex where he remained until December 1, 2002. (Petitioner Exhibit No. 4). At the Charles Bass Center, Petitioner was in segregation due to the nature of his offense. At a prison program, Petitioner learned of an inmate assistant and met with an inmate legal advisor

7

about his state post-conviction petition and the one year limitation for filing such a petition. The inmate advisor prepared a pro se post-conviction petition for Petitioner. On July 24, 2003, Petitioner signed, notarized and submitted his petition to prison officials for mailing. The Robertson County Circuit Court filed his petition on August 11, 2003. (Docket Entry No. 16, Attachment 5 at 30). The trial court appointed counsel to represent Petitioner in his post-conviction proceeding.

At the evidentiary hearing, Petitioner's proof was that after his sentence, Petitioner's mother attempted to call his trial counsel at least ten times to inquire about the next step of court proceedings, but could only leave messages that were not returned. According to Petitioner's mother, Petitioner's brother also attempted to call Petitioner's counsel two or three times after the conviction without a response.

In this action, Petitioner presented a 2007 psychological evaluation, reflecting that at age two and a half, Petitioner's parents divorced and he was temporarily unable to speak. (Docket Entry No. 34, McRainey Psychological Evaluation at 1). Petitioner repeated the second grade with special education classes. Petitioner's speech pathologist stated that Petitioner's "attention span is extremely short." Id. By age 15, Petitioner had a verbal IQ of 75, a performance IQ of 80, and a full scale IQ of 75. Id. At age 17, Petitioner dropped out of school in the ninth grade. (Docket Entry No. 16, Attachment 8A, "Certificate of Withdrawal" from Westwood High School). At that time, Petitioner was failing three of his seven classes with Ds in a least two others. Id. During that year, Petitioner also received some C grades. (Docket Entry No. 16, Attachment 8A, report card). A December 2007 evaluation of Petitioner's cognitive skills reflect a scale IQ score of 81. Exhibit 1: McRainey Psychological Evaluation at 5. This evaluation

8

reported Petitioner's verbal IQ of 79, "with academic skills at a fourth-to-fifth grade level and weaknesses in vocabulary and comprehension." Id. Petitioner also has a history of mental illness, including depression and psychosis.

Petitioner cites the state post-conviction record where his attorney testified that Petitioner "does not read and write very well and his ability to understand the legal technicalities . . . was severely hampered by his lack of education." (Docket Entry No. 16, Attachment 6, Transcript of post-conviction hearing a p. 11). Petitioner notes that during post-conviction hearing, the trial judge twice told Petitioner to "listen to the question," and one to "slow down or something because . . . the question and the answer aren't coming together." Id. at pp. 14, 30. Petitioner has a prior criminal history

### D. Conclusions of Law

The Antiterrorism and Effective Death Act of 1996 sets a one-year statute of limitations for habeas corpus petitions from prisoners in state custody. 28 U.S.C. § 2244(d)(1). The limitations run from the latest of:

>   (A)   The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B)   The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C)   The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D)   The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. In Lindh v. Murphy, 521 U.S. 32 (1997) the Supreme Court held that the AEDPA was to be

9

Case 3:06-cv-01172 Document 50 Filed 03/02/10 Page 9 of 16 PageID #: 578

applied prospectively, i.e., beginning after April 24, 1996. Because Petitioner's direct appeal was pending after 1996, AEDPA's limitations period applies to his claims.

Under 28 U.S.C. § 2244(d)(2), "the time <u>during which a properly filed application for State post-conviction</u> or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection." Id. (emphasis added). "[A]n application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, ... the time limits upon its delivery." Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000). "The [statutory] tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." Id. 602 (6th Cir. 2003) (quoting Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y. 1998)).

In Vroman, the habeas petitioner asserted that his state post-conviction petition was timely under Ohio law and thus, tolled the federal statute of limitations for his federal habeas action. The Sixth Circuit ruled that unless the State post-conviction proceedings effectively tolled the federal habeas limitations period, Plaintiff's federal claim was untimely because, "[t]he timeliness of an Ohio prisoner's post-conviction petition is governed by state statute." Id. at 603. As that Court explained:

> "[F]ederal courts ... defer to a state court's judgment on issues of state law and, more particularly, on issues of state procedural law." Israfil, 276 F.3d at 771; see also Godfrey v. Beightler, 54 Fed.Appx. 431, 2002 WL 31805606, at *2 (6th Cir. Dec.10, 2002) (stating that "federal courts defer to the state court's interpretation of state filing requirements"). In Israfil, the Sixth Circuit held that "[b]ecause state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice." 276 F.3d at 771 (citations

10

omitted). Therefore, the Israfil court concluded that the district court properly
deferred to the Ohio state court's finding as to whether the petitioner's
post-conviction motion had been submitted according to Ohio's timeliness
requirements. Id. at 771-72; see also Raglin, 10 ␣Fed.Appx. 314, 2001 WL 523530, at
*1 (holding that "untimely state collateral attacks are not properly filed and do not
toll the statute of limitations" and therefore concluding that the petitioner's
post-conviction petition did not toll the statute of limitations because it was
dismissed as untimely under Ohio law). Here, as in Israfil, the district court properly
concluded that Ohio's determination of whether Vroman's post-conviction petition
was properly filed governs whether such action tolls the statute of limitations under
§ 2244(d)(2).

Id. at 603. The Sixth Circuit emphasized that "[t]his court . . . does not function as an additional state appellate court reviewing state court decision on state law or procedure. Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988). Moreover, federal court are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." Vroman, 346 F.3d at 604 (citation omitted).

The pendency of a federal habeas action does not toll the limitation period for filing of a federal habeas claim. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). A habeas claim based upon state law, is not a federally cognizable claim,[2] and cannot toll the AEDPA's statute of limitations. Austin v. Mitchell, 200 F.3d 391, 394 (6th Cir. 1999) ("We hold, therefore, that a state petition for post-conviction or other collateral review must present a federally cognizable claim for it to toll the statute of limitations pursuant to 28 U.S.C. § 2244 (d) (2))." An untimely claim under state law does not toll ADEA's limitation period. Young v. Mohr, 201 F.3d 442, 1999 WL 125308 (6th Cir. 1999).

After his September 4, 2002 plea, Petitioner's conviction under state law became final on

---

[2]See State v. Bigbee, 885 S.W.2d 797, 816 (Tenn. 1994). In Bigee, the Tennessee Supreme Court confirmed that Middlebrooks was based solely on Tennessee constitutional law.

11

October 4, 2002. State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). On August 11, 2003, Petitioner filed his state pro se post-conviction petition and 311 days elapsed under the federal habeas limitations period. The federal habeas limitations was tolled from August 11, 2003, the date of Petitioner's filing of his post-conviction petition until May 2, 2006, when the Tennessee Court of Criminal Appeals issued its mandate. Yet, the Petitioner filed his application for permission to appeal in the Tennessee Supreme Court on June 12, 2006 and that application was denied on July 10, 2006. Petitioner delivered his petition in this action to prison officials on August 25, 2006.[3] Yet, Petitioner asserts that as of August 25, 2006, 426 days had lapsed under the federal habeas statute. (Petitioner Exhibit No. 7).

In addition to his counsel's omissions, Petitioner also seeks equitable tolling based upon his mental incompetence. Petitioner cites the December 2007 evaluation finding that Petitioner has an IQ score of 75, that is "the borderline range of intellectual functioning." According to this evaluation, Petitioner also "has deficits in tasks related to language [] and his academic skills are on a fourth-to-fifth grade level with weaknesses in vocabulary and comprehension." Yet, the state court found that Petitioner competent to enter his guilty plea and at that time, Petitioner who has a prior criminal history stated that he understood his legal rights and knowingly waived them. Petitioner also raised an issue about a fine that reflects his understanding of the proceeding.

Equitable tolling is a judicial doctrine that extends to federal habeas action. Souter, 395

---

[3] Although not cited by Petitioner, under Jimenez v. Quartermaster, 129 S. Ct. 681 (2009), the federal habeas statute's 365-day filing deadline is tolled when state courts reopen their proceedings. When the Tennessee Supreme Court denied his application for review on July 10, 2006, the federal limitations period was tolled from the time of his pro se application until July 12, 2006. With this extension, the federal habeas limitation period of one year did not expire. For this reason, the Court also considers the merits of his claims.

12

F.3d at 590-91. In determining whether equitable tolling should be applied to a statue of limitations, a court must consider: (1) Petitioner's lack of notice of the filing requirement; (2) the Petitioner's lack of constructive knowledge of the filing requirement; (3) Petitioner's diligence in pursuing his rights; (4) absence of prejudice to the Respondent; and (5) the Petitioner's reasonableness in remaining ignorant to the legal requirement for filing his claim. Id. at 588 (quoting Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir. 2001). Yet, the tolling doctrine is invoked only in exceptional circumstances. Souter, 395 F.3d at 590-91.

Equitable tolling is appropriate when the prisoner reasonably remains ignorant that the 365-day deadline has begun to run. See e.g., Miller v. Collins, 305 F.3d 491, 496 (6th Cir. 2002). Miller v. Collins, 305 F.3d 491, 496 (6th Cir. 2002) ("From a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion."). Yet, "ignorance of the law alone is not sufficient to warrant equitable tolling." Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir. 1991); see also Allen v. Yukins, 366 F.3d 396, 403 (2004). "Absent a satisfactory explanation for his failure to timely file his habeas petition," a habeas petitioner would fail to exercise due diligence in pursuing his claim and thus, would not be entitled to equitable tolling of the limitations period. Dunlap 250 F.3d at 1010.

For tolling based upon Petitioner's mental condition or incompetence, the habeas petitioner must make a threshold showing of incompetence and proof that his incompetence affected his ability to file a timely habeas petition. Nowak v. Yukins, 46 Fed. Appx. 257, 259 (6th Cir. Mich. 2002). Here, Petitioner has demonstrated his limited educational level and mental condition. Yet, at the time of his guilty plea, Petitioner was found competent. Moreover, in Garner v. Mitchell, 557 F.3d 257, 263-64 (6th Cir. 2009) (en banc), the Sixth Circuit held that a habeas petitioner who presented expert assessments findings his "diminished mental capacity, a

13

troubled upbringing and a poor education as well as an IQ of 76 who was of borderline intelligence, was nonetheless competent to waive his Miranda rights." In Warrner v. Lewis, 365 F.3d 529, 531, 532 n.2 (6th Cir. 2004), the Sixth Circuit expressed "grave doubt" that habeas petitioner's IQ of 71 would justify equitable tolling. As a factual matter, Petitioner's guilty plea colloquy, his question at that colloquy and his letter to the State agency complaining about his lawyer, reflect his ability to assert his interests.

Even if tolling were warranted, given his guilty plea, Petitioner's claims for habeas relief are limited as a matter of law:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. <u>He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in</u> [McMann. v. Richardson, 397 U.S. 759, 770 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (emphasis added).

Since Tollett, the Supreme Court reiterated in United States v. Broce, 488 U.S. 563 (1989), on defendant's withdrawal of his guilty plea:

> "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S., at 757, 90 S.Ct., at 1473 (citation omitted).
>
> Similarly, we held in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), that a counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his

14

confession. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." Id., at 770, 90 S.Ct., at 1448. See also Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("[J]ust as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings") (citation omitted).

Id. at 763-64.

Here, the state courts' factual findings on Petitioner's counsel reflects that trial counsel provided reasonable assistance under Strickland v. Washington, 466 U.S. 668, 687 (1984), in successfully pursuing Petitioner's request to secure a guilty agreement for only one of the seven counts of rape of a child. Petitioner requested his counsel to pursue a plea after opening statements at his trial. At that time, counsel was prepared for trial and his counsel was able to secure an agreement that reduced the Petitioner's sentence from a potential of 60 years to 18 years.

At his guilty plea hearing, Petitioner responded without any difficulty to questions from the trial court about his waiver of rights and plea agreement. The trial court clearly explained the meaning of a "nolo contendere" plea and Petitioner's plea petition reflects that next to "nolo contendere" is the phrase "best interest plea." (Docket Entry No. 16-12 at p. 2). The state appellate court findings reflect that Petitioner's trial counsel and the trial court expressly informed Petitioner that he would have to serve his sentence at 100% without sentence credits or probation. At his plea haring, Petitioner raised a question about imposition of a fine. In response to repeated questions from the trial court, Petitioner asserted his understanding of the proceeding.

15

(Docket Entry No. 16-17, Plea Hearing at pp. 20-21). The Court concludes that Petitioner's plea was knowing and voluntarily entered with effective assistance of counsel.

Thus, Respondent's motion to dismiss should be granted and the petition for the writ of habeas corpus should be denied.

An appropriate Order is filed herewith.

**ENTERED** this _____ day of March, 2010.

                                                      WILLIAM J. HAYNES, JR.
                                                     United States District Judge